UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JOHN L. WARD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No.   12-cv-1313 |
| | ) |
| KEVWE AKPORE, *Warden,* | ) |
| | ) |
| Respondent. | ) |

## O R D E R  &  O P I N I O N

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an Answer to the Petition (Doc. 10), to which Petitioner filed a Reply (Doc. 12). For the following reasons, Petitioner's Petition is denied.

### PROCEDURAL HISTORY

In 2007, Petitioner was convicted of attempted murder, aggravated battery with a firearm, and armed robbery by a jury in the Circuit Court of the Sixth Judicial Circuit, in Macon County, Illinois. (Doc. 11-16 at 219-23). He was sentenced to two consecutive fifteen-year sentences. (Doc. 11-16 at 195). He is currently incarcerated at Hill Correctional Center, in the custody of the state of Illinois.

At trial, the following evidence was put on. On the evening of October 11, 2005, Dean Richardson and an acquaintance, Torrey Simpson, drove from Decatur, Illinois, to Springfield, Illinois, and visited a strip club. (Doc. 14-1 at 99-101). Upon their return to Decatur at approximately 10:15 P.M., they stopped at a Kroger store. (Doc. 14-1 at 103-04). Mr. Simpson mentioned he had a friend who wanted to buy

some marijuana, and Mr. Richardson agreed to sell some to this friend. (Doc. 14-1 at 105-06). They went inside to purchase some food, then waited for the friend in Mr. Simpson's vehicle. (Doc. 14-1 at 105). At around 10:30 or 10:40 P.M., a man, who Mr. Richardson later identified as Petitioner, walked up to the vehicle and got in. (Doc. 14-1 at 107-08, 123). After initial discussion about a sale of drugs, the man pulled out a pistol and pointed it at Mr. Richardson, and told him to give him his money. (Doc. 14-1 at 109). Mr. Richardson handed over his wallet and the man pulled the trigger, shooting Mr. Richardson through the arm and into his chest. (Doc. 14-1 at 109-10). After the shooter ran away, Mr. Simpson drove the vehicle to a nearby Walgreens, where police officers later arrived. (Doc. 14-1 at 113-14). Mr. Richardson was taken to hospital, and remained hospitalized for over seven weeks. (Doc. 14-1 at 114).

Marlon Williams, an acquaintance of Petitioner's, provided some corroboration for Mr. Richardson's testimony that it was Petitioner who had shot him. Mr. Williams testified Petitioner had picked him up from his grandmother's house some time that evening. (Doc. 14-1 at 168). They then went to Petitioner's cousin's house, where they smoked some marijuana together. (Doc. 14-1 at 170). After receiving a couple of phone calls, at about 9:15 or 9:30 P.M., Petitioner took Mr. Williams back to his grandmother's house, telling Mr. Williams he intended to pick up his girlfriend from work and then meet up with "this guy." (Doc. 14-1 at 171-73). Petitioner told Mr. Williams he was going to "hit a lick," which Mr. Williams understood to mean take something from somebody. (Doc. 14-1 at 172). That meaning was later confirmed by Detective Hendricks, who was familiar with

2

this term from his experience as a police officer. (Doc. 11-20 at 24-25). Mr. Williams tried calling Petitioner the next day, but got no answer. (Doc. 14-1 at 173). When he did finally reach Petitioner that day, Petitioner told Mr. Williams he needed a new phone because he had lost his the night before. (Doc. 14-1 at 174). Petitioner also said he needed to find a newspaper. (Doc. 14-1 at 175). When they later discussed what happened that night, Petitioner told Mr. Williams that he had been set up, that he had tried to rob someone, and that he had to shoot the person because he grabbed Petitioner's gun. (Doc. 14-1 at 175-76).

After learning of the incident, police and emergency responders arrived at the Walgreens where the car was located, and officers secured the scene. (Doc. 14-1 at 133, 135-36). Detective Cline collected evidence from the car, including a cell phone from the rear seat on the driver's side of the vehicle, where the shooter had been sitting. (Doc. 14-1 at 157; Doc. 11-20 at 8-9). Detective Chaney analyzed the phone for fingerprints. (Doc. 14-1 at 159). He was able to obtain a fingerprint from it, but it was smeared so was not suitable for comparison. (Doc. 14-1 at 161-62). Records kept by the cellular phone company showed the phone was obtained by Mr. Williams about a week before the incident. (Doc. 14-1 at 150-51). The employee who assisted Mr. Williams with the transaction testified that Mr. Williams represented that the phone was to be used by his friend, not himself. (Doc. 14-1 at 153). Mr. Williams was accompanied by a black male at the store when obtaining the phone, but the employee could not describe or identify him. (Doc. 14-1 at 153-54). Mr. Williams testified that he had gotten the phone for Petitioner, and that Petitioner had it with him on the night in question. (Doc. 14-1 at 168-69). Call logs submitted

into evidence showed multiple phone calls between 10:15 P.M. and 11:30 P.M. on October 11, 2005, between the phone found in the vehicle and the phone Mr. Simpson had been using that night. (Doc. 11-20 at 5-7; Doc. 14-1 at 164-65). Data a police officer obtained from the phone Mr. Simpson was using showed that the number for the phone found in the vehicle was labeled as belonging to "Vell." (Doc. 11-20 at 21-23). This tied in with Mr. Williams' testimony that he calls Petitioner "Lavelle," which is his middle name. (Doc. 14-1 at 166-67, 179).

In the ensuing investigation, police detectives interviewed Mr. Richardson and presented photo lineups. (Doc. 14-1 at 116-17; Doc. 11-20 at 14-16). On October 12, 2005, the day after the shooting, Detective Hendricks presented two photo lineups to Mr. Richardson at the hospital, one of which included a picture of Petitioner, but he failed to make any identification. (Doc. 11-20 at 29-32). Detective Hendricks testified that Mr. Richardson seemed groggy that day and said he was having trouble concentrating. (Doc. 11-20 at 33). The next day, Detective Pruitt presented a lineup containing Mr. Williams' photograph but not Petitioner's. (Doc. 11-20 at 14-16). Mr. Richardson pointed to a picture, not Mr. Williams', and said he could not make an identification but that the person looked similar to the person involved in the shooting. (Doc. 11-20 at 15-16). On November 1, 2005, Detective Hendricks showed Mr. Richardson a different photo lineup containing a more recent picture of Petitioner with a different hairstyle, and Mr. Richardson then identified Petitioner as the shooter after examining the photographs for a few minutes. (Doc. 11-20 at 34-36, 39; Doc. 14-1 at 118, 128-29). Mr. Richardson said he was pretty

4

sure Petitioner was the shooter, but was not one hundred percent sure. (Doc. 11-20 at 36).

Petitioner testified in his own defense as his sole witness. He testified that Mr. Williams did not get a cell phone for him. (Doc. 11-20 at 46). He testified he did not commit the crime, and that he was babysitting that night, alone with his young nieces and nephew at his sister's house. (Doc. 11-20 at 47).

After the trial, Petitioner's new appointed counsel filed a motion for a new trial. The motion raised the issues of insufficient evidence, error in excluding evidence of a conversation between Petitioner and Mr. Williams, and inconsistent answers between the verdicts and special interrogatories. (Doc. 11-16 at 154-56). At a hearing, Petitioner's new attorney also addressed the issue of ineffective assistance of counsel for failure to pursue an alibi defense, as raised in an amended motion. (Doc. 11-18 at 3-4; Doc. 11-16 at 191-93). The court heard testimony from Petitioner, his sister, and his former public defender. Petitioner's sister, Christine Hess, testified that Petitioner had been at her house on the night of October 11, 2005, to babysit her young children. (Doc. 11-18 at 7-8). She left the house around ten at night, and returned around two in the morning to find Petitioner and her children asleep in the house. (Doc. 11-18 at 9-11). She could not remember if Petitioner's former counsel had ever talked with her about that night. (Doc. 11-18 at 13-14). Petitioner again testified that he had been babysitting and never left, and that he had told that to his attorney numerous times and provided information on how to reach his sister. (Doc. 11-18 at 18-22). Finally, Petitioner's former public defender Mr. Ellison testified, explaining that he did not contact Ms. Hess himself,

5

but determined from notes by the previous attorney on the case that she did not have knowledge of Petitioner's whereabouts during the actual time of the crime, was reluctant to get involved, and would not be a helpful witness. (Doc. 11-18 at 25-29). The court concluded that though the attorney's failure to investigate rendered his performance deficient, it did not affect the outcome of the case, so Petitioner was not prejudiced. (Doc. 11-18 at 52-53). After a motion to reconsider the sentence was also denied, Petitioner filed a Notice of Appeal. (Doc. 11-16 at 201-04; Doc. 11-22 at 2-5).

On appeal before the Appellate Court of Illinois, Petitioner raised four issues: the verdict was against the manifest weight of the evidence, trial counsel was ineffective for failing to interview and call Ms. Hess in support of Petitioner's alibi, jury instructions on identification were unfair, and trial counsel was ineffective for offering and failing to object to the identification instruction. (Doc. 11-3 at 8). Petitioner's appeal was denied on February 25, 2009. (Doc. 11-1). Petitioner filed a Petition for Leave to Appeal ("PLA") to the Supreme Court of Illinois, but it was denied on May 28, 2009. (Docs. 11-6 and 11-7). Petitioner did not file a petition for writ of certiorari to the United States Supreme Court. (Doc. 11-8 at 62).

Petitioner filed a postconviction petition in the trial court on November 12, 2009. (Doc. 11-8 at 57-153). In it, he raised numerous grounds, including as relevant here that his trial counsel failed to impeach Mr. Richardson's testimony based on evidence of his possible intoxication, effects from medication or lack thereof, or incompetence due to his schizoaffective disorder. (Doc. 11-8 at 91-96). The court dismissed the petition on February 19, 2010, as patently without merit because it

6

did not include supporting affidavits. (Doc. 11-8 at 154-55). Petitioner appealed this decision, and the Appellate Court of Illinois affirmed on August 30, 2011. (Doc. 11-8 at 160; Doc. 11-2). Petition then filed a PLA to the Supreme Court of Illinois, but it was denied on November 30, 2011. (Doc. 11-13; Doc. 11-14). Petitioner also filed a petition for state habeas corpus on April 9, 2012. (Doc. 11-9 at 29-73). The petition was dismissed because the issues had already been adjudicated and the petition was outside the scope of the state habeas statute. (Doc. 11-9 at 74-75). Petitioner also appealed this decision, (Doc. 11-9 at 80), but no determination is apparent from the record.

On August 22, 2012, Petitioner filed the instant § 2254 Petition in which he raised three grounds for relief. One ground, challenging a jury instruction that the certainty of a witness be considered in evaluating identification testimony, was dismissed on preliminary review. (Doc. 4 at 2-3). Thus, two claims remain for consideration: ineffective assistance of counsel, and insufficient evidence to support his conviction beyond a reasonable doubt. (Doc. 1 at 5, 16-18; Doc. 1-1 at 1).

## LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2254, federal district courts have the power to hear a petition for a writ of habeas corpus on behalf of a person in state custody on the grounds that the petitioner is in custody in violation of the Constitution, treaties or laws of the United States. Before seeking relief in federal court, a habeas petitioner must first fairly present his claims to the state courts; otherwise, the claims may be procedurally defaulted. The petitioner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas

7

petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This principle requires a petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. In Illinois, this includes filing a petition for leave to appeal to the Illinois Supreme Court. *Id.* at 845-48. Any claim that was not raised at each level of review in the state courts is procedurally defaulted. *See Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). The failure to raise a claim in accordance with state procedural rules provides adequate and independent state law grounds for rejecting the claim, and the federal court will then not review these procedurally defaulted claims. *See, e.g., id.*; *Dretke v. Haley*, 541 U.S. 386, 392-93 (2004).

If a petitioner fails to exhaust state court remedies, and thus his claims are procedurally defaulted, the federal court cannot grant his § 2254 petition unless he can show "cause and prejudice" to excuse the default, or that he is actually innocent of the crime of which he was convicted. *Dretke*, 541 U.S. at 388. In order to qualify for the actual innocence exception, a petitioner must point to new evidence that makes it "more likely than not that no reasonable juror would have convicted him" in light of the evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). He must have "documentary, biological (DNA), or other powerful evidence," such as "some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005).

For claims that are not procedurally defaulted, a federal court may not grant relief on claims that have been adjudicated on the merits by state courts unless the

state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or rested on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). Accordingly, a petitioner must show that the state court's ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law" as stated in Supreme Court decisions, or "confronts a set of facts that are materially indistinguishable from" those of a prior Supreme Court case and yet reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is not contrary to federal law if it identifies and affirms the principles of the relevant Supreme Court precedent. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

To be an "unreasonable application" of federal law, the state court determination must be more than simply incorrect, it must be unreasonable as that term is widely understood in the law. *See Williams*, 529 U.S. at 410-11. A state court's application of federal law is reasonable if it is "at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). Further, "it is not an unreasonable application of clearly established federal law for a state court to decline to apply a specific legal rule that has not been

squarely established" by the Supreme Court. *Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009) (internal quotation marks omitted).

## DISCUSSION

In his § 2254 Petition, Petitioner raises three grounds for relief, one of which was dismissed on preliminary review. The two remaining claims are a claim of ineffective assistance of counsel and the assertion that there was insufficient evidence to sustain a conviction.

Respondent concedes that Petitioner has exhausted his state court remedies. (Doc. 10 at 10). However, Respondent argues that part of Petitioner's ineffective assistance of counsel claim is procedurally defaulted, and Petitioner is otherwise not entitled to relief because the state courts adjudicated his other claims on the merits and the decision was not contrary to or an unreasonable application of federal law.

### *I. Insufficient Evidence*

Due process requires that criminal defendants be proven guilty beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364 (1970). Accordingly, a conviction cannot stand if "no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 317-18 (1979). When reviewing a case, the court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Where the facts conflict, the court presumes the jury resolved the conflicts in the prosecutor's favor and defers to that resolution. *Id.* at 326. Further, because of the procedural posture of a federal habeas petition, the federal court defers to the state court's already deferential

determination. *See Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011). For state convictions, the elements and interpretation of the elements are matters of state law; the federal court may simply assess whether there was sufficient evidence to satisfy the elements as defined by the state. *See Bates v. McCaughtrey*, 934 F.2d 99, 102-03 (7th Cir. 1991).

Petitioner raised the issue of whether there was sufficient evidence to sustain a conviction on direct appeal, arguing that because of the key witnesses' credibility problems and the questionable eyewitness identification, the evidence was insufficient. (Doc. 11-3 at 17-24).[1] The court of appeals recited the applicable standard for such a claim; thus, the decision was not contrary to federal law. (Doc. 11-1 at 11). In applying this standard, the court found there was sufficient evidence for a reasonable trier of fact to convict Petitioner. (Doc. 11-1 at 13). The court noted the jury heard evidence of the relatively weak identification, the Petitioner's alibi, and the witnesses' possible motivations to lie, all favorable to Petitioner, but that the affirmative evidence supporting the prosecution's case was sufficient to support the convictions. (Doc. 11-1 at 11-13).

This Court cannot say the state court's determination of this claim was an unreasonable application of federal law. Attempted first degree murder can be proven in Illinois with evidence of discharging a firearm in the direction of another with malice or total disregard for human life. *People v. Johnson*, 771 N.E.2d 477, 488 (Ill. App. Ct. 2002). Armed robbery involves the knowing taking of property

---

[1] To the extent Petitioner also seeks to challenge the allegedly inconsistent verdicts, (*see* Doc. 12 at 8-9), such a claim is not cognizable on federal habeas corpus review. *See Mahaffey v. Schomig*, 294 F.3d 907, 921 (7th Cir. 2002).

11

from a person with force or threat of force, with the use of a weapon. *See* 720 Ill. Comp. Stat. 5/18-1, 18-2. Finally, the aggravated battery with a firearm conviction simply required evidence of injury to another with knowing or intentional discharge of a firearm. *See* 720 Ill. Comp. Stat. 5/12-4.2 (2007).

Here, it is uncontested that these crimes occurred; Petitioner only challenges the conclusion that he was the perpetrator. It is likely Mr. Richardson's testimony alone, despite the fact that the identification was not beyond question, would have been sufficient evidence to convict Petitioner on all counts in accordance with due process. He identified Petitioner in court and testified he was the person who took his wallet while pointing a firearm at him and then shot him in the chest, from which a jury could conclude or infer all the elements of the charged crimes were satisfied. (Doc. 14-1 at 109-11). Further, the state court noted that Mr. Richardson's identification and testimony were corroborated by Mr. Williams' testimony and the results of the investigation. The presence of some conflicting evidence does not mean the evidence was insufficient, as the court must presume the jury resolved the conflict in the prosecutor's favor and does not disturb this finding. *See Jackson*, 443 U.S. at 326. The credibility issues Petitioner raises are also unproblematic, as "it is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). Thus, it was reasonable for the state court to conclude the evidence presented to the jury satisfied the *Jackson* standard, and that Petitioner's due process rights were not violated. Therefore, this claim fails.

## II. Ineffective Assistance of Counsel

Petitioner claims his trial counsel was ineffective for two reasons. First, Petitioner complains his attorney failed to investigate a potential alibi defense witness and failed to call the witness to testify. (Doc. 1 at 16-17). Second, he failed to investigate evidence that the victim may have been intoxicated or under the influence of drugs or medication when he was shot and that he suffered from a mental disorder, all of which could have been use to impeach his identification of Petitioner as the shooter. (Doc. 1 at 17). Respondent argues that inasmuch as the claim relates to investigation into the victim's testimony, Petitioner's claim is procedurally barred, and that the other claim is without merit.

To make a claim for ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient, and that he was prejudiced by the deficiency such that the result would have been different without the error. *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). There is a strong presumption that counsel is effective. *E.g.*, *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). To satisfy the performance prong, counsel's performance must fall below an "objective standard of reasonableness under prevailing professional norms." *Shell v. United States*, 448 F.3d 951, 954 (7th Cir. 2006). Prejudice exists only where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Further, in federal habeas cases, because of the deferential review of state decisions, the court need only determine whether the application of the *Strickland*

standard was reasonable in this "doubly deferential" review. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### *A. Investigation and Impeachment of Dean Richardson*

Petitioner's claim that his counsel was ineffective for failure to investigate and pursue impeachment of the victim, Mr. Richardson, based on diminished capacity on the night in question, is procedurally defaulted.[2]

As noted above, a claim that was not raised at each level of review in the state courts is procedurally defaulted. *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). A federal court will not review a claim if it was rejected based on adequate and independent state grounds, such as a state procedural rule. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The court looks to the "last state court rendering a judgment in the case" to determine if the decision on the federal claim rested on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). To be adequate, the procedural basis for rejecting the federal claim must be firmly established and regularly followed in the state. *See James v. Kentucky*, 466 U.S. 341, 348-49 (1984). It is independent if it does not primarily rest on and is not intertwined with the underlying merits of the federal claim. *See Holmes v. Hardy*, 608 F.3d 963, 967 (7th Cir. 2010).

In his state postconviction petition, Petitioner raised for the first time the argument that trial counsel was ineffective because he failed to impeach Mr.

---

[2] To the extent it is related, the Court includes in this claim Petitioner's apparent argument that counsel was ineffective for failing to inquire as to the victim's inability to identify Petitioner in one of the photo lineups. (*See* Doc. 1 at 18). If Petitioner intended to argue this as a separate claim, it would also be procedurally defaulted because he failed to fairly present this claim to the state courts.

Richardson's testimony based on evidence of his possible intoxication, influence from medication, or incompetence due to his schizoaffective disorder. (Doc. 11-8 at 91-96). The trial court dismissed the petition as patently without merit. (Doc. 11-8 at 154-55). On appeal, Petitioner argued the trial court should not have dismissed his ineffective assistance of counsel claim. (Doc. 11-10). The Appellate Court of Illinois affirmed, holding his petition did not include supporting affidavits as required by 725 Ill. Comp. Stat. 5/122-2, so could not state the "gist of a constitutional claim." (Doc. 11-2 at 1-2). Petition filed a PLA to review this decision, but it was denied. (Doc. 11-13; Doc. 11-14).

The Appellate Court did not address the merits of Petitioner's claim, instead basing the affirmance of the dismissal on his failure to file affidavits in accordance with § 122-2, which provides that a postconviction petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 Ill. Comp. Stat. 5/122-2. Thus, the procedural grounds relied upon by the state court were independent of the federal claim. It was also adequate because the rule is established by the state statute and is regularly followed. *See, e.g.*, *Thompkins v. Pfister*, 698 F.3d 976, 986-87 (7th Cir. 2012). Thus, this claim is procedurally defaulted. Petitioner does not make any intelligible effort to show cause and prejudice for this default. Further, Petitioner does not argue that he is actually innocent of the crimes or point to another fundamental miscarriage of justice.[3] Thus, the Court cannot consider the claim. *See Crockett v. Hulick*, 542 F.3d

---

[3] To show actual innocence, a petitioner "must show that 'in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.' " *Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010) (quoting

15

1183, 1193 (7th Cir. 2008). Therefore, this claim is barred, and will not be reviewed by this Court.

### *B. Investigation of Alibi Witness*

Petitioner's claim that his counsel was ineffective for failing to investigate a possible alibi witness is without merit, as the state court decision was not contrary to or an unreasonable application of the prevailing federal law. In his motion for a new trial and on direct appeal, Petitioner claimed his counsel was ineffective for failing to investigate and call as a witness his sister, Christine Hess. He argued she would have supported his alibi defense, and confirmed that he was babysitting her young children on the night the crimes took place. At the hearing on the motion for a new trial, Ms. Hess testified Petitioner had been at her house when she left at around ten in the evening, that she left him alone with her three children, and that he was there asleep when she returned home at around two in the morning. (Doc. 11-18 at 7-11). Petitioner's trial counsel also testified, explaining he did not contact Ms. Hess himself because former counsel's notes indicated she was reluctant to testify and would not be a helpful witness, especially in light of the four-hour gap of time between her leaving and returning. Petitioner claimed he had told his attorney multiple times about his alibi defense and how to reach Ms. Hess, but that he never did. (Doc. 11-18 at 18-22). The trial court determined that although Petitioner's counsel's performance was deficient for failing to investigate this witness, Petitioner was not prejudiced by this failure. (Doc. 11-18 at 52-53).

---

*House v. Bell*, 547 U.S. 518, 537 (2006)). Though Petitioner raises the testimony of his sister, who would have given testimony to support his alibi, he does not argue that this evidence shows he was actually innocent, and even if he did so, he certainly could not have met this high standard.

16

The court of appeals affirmed this decision, citing and applying the two-prong analysis from *Strickland*. (Doc. 11-1 at 13-16). The court determined that Petitioner was not prejudiced by any failure to investigate his alibi or the failure to present Ms. Hess as a witness because she could only corroborate Petitioner's alibi testimony as to the time an hour before and more than two hours after the shooting took place. (Doc. 11-1 at 16). The court also expressed skepticism about the trial court's determination that his counsel's performance had been deficient, citing a strong deference to tactical decisions, but its conclusion on the prejudice prong obviated the need to reach the question. (Doc. 11-1 at 15-16).

As the court properly set forth the *Strickland* test, the decision was not contrary to federal law. The decision was also not an unreasonable application of federal law. As the state court alluded to, Ms. Hess was not a true alibi witness, as she could not testify regarding Petitioner's whereabouts during the crime, only before and after. *See United States v. Ashimi*, 932 F.2d 643, 649 (7th Cir. 1991). Further, in light of the substantial evidence supporting Petitioner's convictions discussed above, it was reasonable for the state court to conclude that there was no reasonable probability that the outcome would have been different with Ms. Hess's testimony. Though the prosecutor referenced the lack of corroboration of Petitioner's alibi in his closing argument, it was only one small portion of the rebuttal argument. (Doc. 11-20 at 78). Ms. Hess's testimony could have made Petitioner's alibi claim more believable, but given the victim's identification of Petitioner and Mr. Williams' corroboration testimony, and the fact that Ms. Hess could not confirm Petitioner's presence during the actual crime, it was reasonable for the state court

to conclude Petitioner was not prejudiced by any failure on his counsel's part.[4] Thus, this claim is without merit.

### CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(1), a petitioner may only appeal from the court's judgment in his habeas case if he obtains a certificate of appealability. A certificate of appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner need not show that the appeal will succeed, but he must show "'something more than the absence of frivolity' or the existence of mere 'good faith'" on his part. *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate. Fed. R. App. P. 22(b)(1).

Based on the record before it, the Court cannot find that reasonable jurists would debate that Petitioner's claims of insufficient evidence and ineffective

---

[4] The Court also notes that the appellate court was likely right in questioning the finding that counsel's performance was below the *Strickland* level of competence, but because the appellate court relied solely on the prejudice prong, the Court need not analyze the issue.

assistance of counsel are meritless. Accordingly, a certificate of appealability is denied.

## Conclusion

IT IS THEREFORE ORDERED that Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) is DENIED. The Court DECLINES to issue a certificate of appealability.

CASE TERMINATED.


Entered this <u>13th</u> day of August, 2013.


                                                      s/ Joe B. McDade
                                                     JOE BILLY McDADE
                                                    United States Senior District Judge